FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

NOV 13 2007

GREGORY C. LANGHAM
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07 - CV - 02382 -WYD-BNB

UNITED STATES OF AMERICA,

*Plaintiff*,

v.

ASPEN PETROLEUM PRODUCTS, INC., and
TERRANCE TSCHATSCHULA

*Defendants*.

## COMPLAINT

The United States of America, by authority of the Attorney General, and at the request of the Administrator of the United States Environmental Protection Agency, for its complaint states as follows:

### NATURE OF ACTION

1. This is a civil action brought against defendants Aspen Petroleum Products, Inc. ("Aspen") and Terrance Tschatschula (collectively, "Defendants") pursuant to Section 211(d) of the Clean Air Act, as amended ("Act"), 42 U.S.C. § 7545(d), for violations of Section 211 of the Act, 42 U.S.C. § 7545, and regulations promulgated thereunder at 40 C.F.R. Part 80 (known as the "Fuels Regulations").

2. As described below, Defendants produced gasoline for sale in Colorado by blending drip gas and ethanol with previously certified gas ("PCG") without complying with multiple provisions of the Fuels Regulations. The complaint seeks injunctive relief and civil penalties for these violations.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action and the parties pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Sections 205 and 211 of the Act, 42 U.S.C. §§ 7524 and 7545.

4. Venue in this District is proper pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1395(a) and Section 205 of the Act, 42 U.S.C. § 7524, because Defendants reside in this District.

## DEFENDANTS

5. Defendant Aspen is a Colorado corporation located at 2121 S. Oneida St., Suite 625, Denver, Colorado.

6. Defendant Terrance Tschatschula is a resident of the State of Colorado and the President and sole shareholder of Aspen.

## THE CLEAN AIR ACT AND APPLICABLE REGULATIONS

7. Section 211 of the Act, 42 U.S.C. § 7545, and the regulations promulgated thereunder at 40 C.F.R. Part 80 ("Fuels Regulations"), set forth a number of emissions

standards. In addition, the Act and Fuels Regulations require refiners to sample and test the gasoline that they produce and to submit reports to the U.S. Environmental Protection Agency ("EPA") to demonstrate compliance with the applicable emission standards.

8. 40 C.F.R. § 80.2(i) defines a refiner as "any person who owns, leases, operates, controls, or supervises a refinery." 40 C.F.R. § 80.2(h), in turn, defines a refinery to mean any facility, including but not limited to, a tanker truck or vessel, where gasoline is produced, including any facility at which blendstock is added to gasoline.

9. Section 211(d)(1) of the Act, 42 U.S.C. § 7545(d)(1), provides, in part, that any person who violates Section 211(f) of the Act, 42 U.S.C. § 7545(f), or the regulations prescribed under Section 211(c), (h) and (k) of the Act, shall be liable for a civil penalty of up to $25,000 per day for each day of violation, plus the amount of any economic benefit or savings resulting from the violation. Pursuant to 40 C.F.R. § 19.4, the amounts of civil penalties for these violations increased to $27,500 per day, plus the amount of any economic benefit or savings resulting from the violation, for violations that occurred on or after January 31, 1997 through March 15, 2005; and $32,500 per day, plus the amount of any economic benefit or savings resulting from the violation, for violations that occurred after March 15, 2004.

10. Section 211(d)(2) of the Act, 42 U.S.C. § 7545(d)(2), provides this Court with jurisdiction to restrain violations of Section 211(f) of the Act, 42 U.S.C. § 7545(f),

3

and the Fuels Regulations prescribed under Section 211(c), (h) and (k) of the Act.

### A. Conventional Gasoline Standards and Regulations

11.   Section 211(k)(8) of the Act, 42 U.S.C. § 7545(k)(8), sets forth the emissions limits for conventional gasoline. This section of the Act required EPA to promulgate regulations that prohibit refiners from selling conventional gasoline that results in average per gallon emissions of certain pollutants that exceed the emissions attributable to the gasoline that the refiner introduced into commerce in the 1990 calendar year.

12.   The regulations promulgated under Section 211(k)(8) of the Act, 42 U.S.C. § 7545(k)(8), are found at 40 C.F.R. Part 80, Subpart E. These regulations, which are known as the Anti-Dumping regulations, require refiners to comply with a number of sampling, testing, record keeping, reporting and quality assurance requirements, in addition to the emissions limits mandated by the Act.

13.   The Anti-Dumping regulations, at 40 C.F.R. § 80.101(i)(1), require refiners to collect and analyze a representative sample of each batch of conventional gasoline that they produce for the purpose of determining compliance with the applicable emissions standards by using the test methods set forth in 40 C.F.R. § 80.46.

14.   40 C.F.R. § 80.80(e) provides that "any conventional gasoline for which the refiner or importer does not sample and test to determine the relevant properties, shall be

4

deemed . . . [to have certain properties set forth in the regulations] unless the respective party or EPA demonstrates by reasonably specific showings, by direct or circumstantial evidence, different properties for the gasoline giving rise to the violations."

15.     40 C.F.R. § 80.105(a) requires each refiner to file an Anti-Dumping Program Annual Report that is designed to demonstrate compliance with the applicable exhaust toxics and NOx emissions standards.

16.     40 C.F.R. § 80.105(c) and (d) require each refiner to submit an annual attest engagement report prepared in accordance with 40 C.F.R. Part 80, Subpart F.

### B.     Gasoline Sulfur Standards and Regulations

17.     Section 211(c)(1) of the Act, 42 U.S.C. § 7545(c)(1), authorizes EPA to promulgate regulations controlling the manufacture of fuel if (a) the emissions products of the fuel cause or contribute to air pollution which may reasonably be anticipated to endanger public health or welfare, or (b) the emissions products of the fuel will significantly impair emissions control systems in general use or which will be in general use were the fuel control to be adopted.

18.     EPA promulgated regulations pursuant to Section 211(c)(1) of the Act, 42 U.S.C. § 7545(c)(1), that require refiners to limit the sulfur content of gasoline, and that impose a number of sampling, testing, record keeping, reporting and quality assurance requirements relating to the sulfur content of gasoline. These regulations, which are

known as the Gasoline Sulfur Regulations, are found at 40 C.F.R. Part 80, Subpart H.

19.     The Gasoline Sulfur Regulations, at 40 C.F.R. § 80.195, set forth limits on the sulfur content in gasoline. The first sulfur standards under the Gasoline Sulfur Regulations became effective January 1, 2004. The sulfur standards tightened in 2005 and then again 2006. The following chart sets forth the sulfur standards under 40 C.F.R. § 80.195:

**Implementation Dates for Gasoline Sulfur Standards**

| Sulfur Standard | Date |
|---|---|
| 300 ppm cap<br>120 ppm Corporate Pool Average | Jan. 1, 2004 |
| 300 ppm cap<br>90 ppm Corporate Pool Average<br>30 ppm average | Jan. 1, 2005 |
| 80 ppm cap<br>No Corporate Pool Average<br>30 ppm average | Jan. 1, 2006 |

20.     The Gasoline Sulfur Regulations, at 40 C.F.R. § 80.330, require refiners to collect and analyze a representative sample of each batch of gasoline that they produce for the purpose of determining the sulfur content of the gasoline by using the test methods set forth in 40 C.F.R. § 80.46. The process that refiners must follow who produce gasoline by blending blendstock with previously certified gasoline is set forth at 40 C.F.R. § 80.340.

6

21. 40 C.F.R. § 80.370 requires refiners to file annual Gasoline Sulfur Reports to demonstrate compliance with the applicable gasoline sulfur standards. These reporting requirements became effective beginning in the 2004 reporting period.

22. 40 C.F.R. § 80.415 requires each refiner to submit an annual attest engagement report relating to the Gasoline Sulfur Regulations, in addition to the attest engagement report required under 40 C.F.R. Part 80, Subpart F.

C. **Mobile Source Air Toxics Standards and Regulations**

23. EPA promulgated regulations pursuant to Section 211(c)(1) of the Act, 42 U.S.C. § 7545(c)(1), that require refiners of conventional gasoline to obtain an exhaust toxics compliance baseline and prohibit refiners from producing gasoline that does not meet this baseline. These regulations, which are known as the Mobile Source Air Toxics rule ("MSAT Rule"), are found at 40 C.F.R. Part 80, Subpart J. The MSAT Rule also imposes a number of sampling, testing, record keeping, reporting and quality assurance requirements relating to the toxic emissions from gasoline.

24. The MSAT Rule, at 40 C.F.R. § 80.910(a), requires each refiner to apply for a toxics baseline by June 30, 2001 or three months before it first introduces gasoline into U.S. commerce, whichever is later.

25. The MSAT Rule, at 40 C.F.R. § 80.990(a), requires each refiner to submit an annual report setting forth its MSAT compliance baseline and incremental volume for

its production of conventional gasoline. These reporting requirements became effective beginning in the 2002 reporting period and are designed to demonstrate compliance with the MSAT standards.

26. 40 C.F.R. § 80.1035 requires each refiner to submit an annual attest engagement report relating to the MSAT Rule, in addition to the attest engagement report required under 40 C.F.R. Part 80, Subpart F.

### D.   Gasoline Volatility Standards and Regulations

27. Section 211(h) of the Act, 42 U.S.C. § 7545(h), required EPA to promulgate regulations prohibiting the sale of gasoline that exceeds certain volatility limits. The regulations that EPA promulgated under this section of the Act, which are known as the Volatility Regulations, are at 40 C.F.R. §§ 80.27 and 80.28.

28. 40 C.F.R. § 80.27(a)(2) states that during the 1992 and later regulatory control periods no person, including any refiner, "shall sell, offer for sale, dispense, supply, offer for supply, transport or introduce into commerce gasoline whose Reid Vapor Pressure [("RVP")] exceeds the applicable standard." The term "regulatory control period," as used in this section of the regulations, is defined as the period from May 1 through September 15 of any calendar year. 40 C.F.R. § 80.27(a)(2)(ii).

29. Pursuant to a special provision for alcohol blends set forth in 40 C.F.R. § 80.27(d), gasoline containing between 9% and 10% ethanol receives a 1.0 pound per

8

square inch ("psi") allowance, thereby increasing the effective RVP standard for qualifying ethanol blends by 1 psi.

### E. Substantially Similar Requirements

30. Section 211(f) of the Act, 42 U.S.C. § 7545(f), prohibits any manufacturer of any fuel to introduce that fuel into commerce for use by any person in motor vehicles manufactured after model year 1974 which is not substantially similar to any fuel utilized in the certification of any model year 1975, or subsequent model year, vehicle or engine under Section 206 of the Act, 42 U.S.C. § 7525.

31. In 1991, EPA promulgated its most recent Interpretive Rule defining the term "substantially similar." See 56 Fed. Reg. 5352 (Feb. 11, 1991). The Interpretive Rule provides, in part, that "[t]he fuel must contain no more than 2.0 percent oxygen by weight, except fuels containing aliphatic ethers and/or alcohols (excluding methanol) must contain no more than 2.7 percent oxygen by weight." Id.

32. Section 211(f)(4) of the Act, 42 U.S.C. § 7545(f)(4), provides that the Administrator of EPA may waive the substantially similar requirements established under Section 211(f)(1) of the Act, 42 U.S.C. § 7545(f)(1), if an applicant establishes that such fuel or fuel additive or a specified concentration thereof, and the emission products of such fuel or additive or specified concentration thereof, will not cause or contribute to a failure of any emissions control device or system.

9

33. EPA has granted a number of waivers pursuant to Section 211(f)(4) of the Act, 42 U.S.C. § 7545(f)(4), to allow gasoline to contain up to 10 volume percent ethanol.

## GENERAL ALLEGATIONS

34. At all times relevant to this action, Aspen was a "refiner" as defined in 40 C.F.R. § 80.2(i) and a "person" within the meaning of Section 302(e) of the Act, 42 U.S.C. § 7602(e).

35. At all times relevant to this action, Terrance Tschatschula was a "refiner" as defined in 40 C.F.R. § 80.2(i) and a "person" within the meaning of Section 302(e) of the Act, 42 U.S.C. § 7602(e).

36. From at least October 2001 through August 2006, Defendants produced conventional gasoline by blending drip gas and ethanol with previously certified gasoline in tanker trucks. Drip gas, which is also known as natural gas condensate or natural gasoline, is a liquid extracted from the collection and processing of natural gas.

37. Aspen sold the gasoline and drip gas to various retail outlets in the general vicinity of Denver, Colorado.

## FIRST CLAIM FOR RELIEF

38. Paragraphs 1 through 37 are re-alleged and incorporated by reference.

39. From at least October 2001 through August 2006, Defendants violated 40 C.F.R. § 80.101(i)(1) by failing to collect and analyze a representative sample of each

10

batch of conventional gasoline that they produced for the purpose of determining compliance with the anti-dumping standards.

40. Pursuant to Section 211(d)(1) and (2) of the Act, 42 U.S.C. § 7545(d)(1) and (2), and 40 C.F.R. § 19.4, the violations set forth above subject the Defendants to injunctive relief and civil penalties of up to $27,500 per day, plus the amount of any economic benefit or savings resulting from the violation for violations that occurred on or before March 15, 2004; and $32,500 per day, plus the amount of any economic benefit or savings resulting from the violation for violations that occurred after March 15, 2004.

## SECOND CLAIM FOR RELIEF

41. Paragraphs 1 through 40 are re-alleged and incorporated by reference.

42. From at least October 2001 through August 2006, Defendants violated Section 211(k)(8) of the Act, 42 U.S.C. § 7545(k)(8), and the regulations promulgated thereunder at 40 C.F.R. § 80.101(b)(3) by producing conventional gasoline with annual average exhaust toxics emissions and NOx emissions that exceed the applicable compliance baseline.

43. Pursuant to Section 211(d)(1) and (2) of the Act, 42 U.S.C. § 7545(d)(1) and (2), and 40 C.F.R. § 19.4, the violations set forth above subject the Defendants to injunctive relief and civil penalties of up to $27,500 per day, plus the amount of any economic benefit or savings resulting from the violation for violations that occurred on or

before March 15, 2004; and $32,500 per day, plus the amount of any economic benefit or savings resulting from the violation for violations that occurred after March 15, 2004.

### THIRD CLAIM FOR RELIEF

44. Paragraphs 1 through 43 are re-alleged and incorporated by reference.

45. Defendants violated 40 C.F.R. § 80.105(a) for the 2001 through 2005 reporting years by failing to file Anti-Dumping Program Annual Reports that are required to demonstrate compliance with the applicable exhaust toxics and NOx emissions standards.

46. Pursuant to Section 211(d)(1) and (2) of the Act, 42 U.S.C. § 7545(d)(1) and (2), and 40 C.F.R. § 19.4, the violations set forth above subject the Defendants to injunctive relief and civil penalties of up to $27,500 per day, plus the amount of any economic benefit or savings resulting from the violation for violations that occurred on or before March 15, 2004; and $32,500 per day, plus the amount of any economic benefit or savings resulting from the violation for violations that occurred after March 15, 2004.

### FOURTH CLAIM FOR RELIEF

47. Paragraphs 1 through 46 are re-alleged and incorporated by reference.

48. Defendants violated 40 C.F.R. § 80.105(c) and (d) by failing to file attest engagement reports for the 2001 through 2005 reporting years.

49. Pursuant to Section 211(d)(1) and (2) of the Act, 42 U.S.C. § 7545(d)(1)

and (2), and 40 C.F.R. § 19.4, the violations set forth above subject the Defendants to injunctive relief and civil penalties of up to $27,500 per day, plus the amount of any economic benefit or savings resulting from the violation for violations that occurred on or before March 15, 2004; and $32,500 per day, plus the amount of any economic benefit or savings resulting from the violation for violations that occurred after March 15, 2004.

### FIFTH CLAIM FOR RELIEF

50. Paragraphs 1 through 49 are re-alleged and incorporated by reference.

51. From at least January 1, 2004 through August 2006, Defendants violated 40 C.F.R. §§ 80.330 and 80.340 by failing to collect and analyze a representative sample of each batch of gasoline that they produced for the purpose of determining the sulfur content of the gasoline using the test methods set forth in 40 C.F.R. § 80.46.

52. Pursuant to Section 211(d)(1) and (2) of the Act, 42 U.S.C. § 7545(d)(1) and (2), and 40 C.F.R. § 19.4, the violations set forth above subject the Defendants to injunctive relief and civil penalties of up to $27,500 per day, plus the amount of any economic benefit or savings resulting from the violation for violations that occurred on or before March 15, 2004; and $32,500 per day, plus the amount of any economic benefit or savings resulting from the violation for violations that occurred after March 15, 2004.

### SIXTH CLAIM FOR RELIEF

53. Paragraphs 1 through 52 are re-alleged and incorporated by reference.

54. Defendants violated 40 C.F.R. § 80.370 by failing to file Gasoline Sulfur Reports for the 2004 and 2005 reporting years.

55. Pursuant to Section 211(d)(1) and (2) of the Act, 42 U.S.C. § 7545(d)(1) and (2), and 40 C.F.R. § 19.4, the violations set forth above subject the Defendants to injunctive relief and civil penalties of up to $27,500 per day, plus the amount of any economic benefit or savings resulting from the violation for violations that occurred on or before March 15, 2004; and $32,500 per day, plus the amount of any economic benefit or savings resulting from the violation for violations that occurred after March 15, 2004.

## SEVENTH CLAIM FOR RELIEF

56. Paragraphs 1 through 55 are re-alleged and incorporated by reference.

57. From at least January 1, 2005 through August 2006, Defendants violated the Gasoline Sulfur standards set forth at 40 C.F.R. § 80.195.

58. Pursuant to Section 211(d)(1) and (2) of the Act, 42 U.S.C. § 7545(d)(1) and (2), and 40 C.F.R. § 19.4, the violations set forth above subject the Defendants to injunctive relief and civil penalties of up to $27,500 per day, plus the amount of any economic benefit or savings resulting from the violation for violations that occurred on or before March 15, 2004; and $32,500 per day, plus the amount of any economic benefit or savings resulting from the violation for violations that occurred after March 15, 2004.

## EIGHTH CLAIM FOR RELIEF

59. Paragraphs 1 through 58 are re-alleged and incorporated by reference.

60. Defendants violated 40 C.F.R. § 80.415 by failing to submit annual attest engagements reports relating to the Gasoline Sulfur Regulations for the 2004 and 2005 reporting years.

61. Pursuant to Section 211(d)(1) and (2) of the Act, 42 U.S.C. § 7545(d)(1) and (2), and 40 C.F.R. § 19.4, the violations set forth above subject the Defendants to injunctive relief and civil penalties of up to $27,500 per day, plus the amount of any economic benefit or savings resulting from the violation for violations that occurred on or before March 15, 2004; and $32,500 per day, plus the amount of any economic benefit or savings resulting from the violation for violations that occurred after March 15, 2004.

## NINTH CLAIM FOR RELIEF

62. Paragraphs 1 through 61 are re-alleged and incorporated by reference.

63. Defendants violated 40 C.F.R. § 80.910(a) by failing to submit a MSAT baseline application or a statement declaring that they did not have sufficient data and intended to use the default compliance baseline by the later of June 30, 2001, or three months prior to the date they first introduced gasoline into U.S. commerce.

64. Pursuant to Section 211(d)(1) and (2) of the Act, 42 U.S.C. § 7545(d)(1) and (2), and 40 C.F.R. § 19.4, the violations set forth above subject the Defendants to

injunctive relief and civil penalties of up to $27,500 per day, plus the amount of any economic benefit or savings resulting from the violation for violations that occurred on or before March 15, 2004; and $32,500 per day, plus the amount of any economic benefit or savings resulting from the violation for violations that occurred after March 15, 2004.

## TENTH CLAIM FOR RELIEF

65. Paragraphs 1 through 64 are re-alleged and incorporated by reference.

66. Defendants violated 40 C.F.R. § 80.990(a) by failing to report their MSAT compliance baseline and incremental volume for the conventional gasoline that they produced during the 2002 through 2005 reporting years.

67. Pursuant to Section 211(d)(1) and (2) of the Act, 42 U.S.C. § 7545(d)(1) and (2), and 40 C.F.R. § 19.4, the violations set forth above subject the Defendants to injunctive relief and civil penalties of up to $27,500 per day, plus the amount of any economic benefit or savings resulting from the violation for violations that occurred on or before March 15, 2004; and $32,500 per day, plus the amount of any economic benefit or savings resulting from the violation for violations that occurred after March 15, 2004.

## ELEVENTH CLAIM FOR RELIEF

68. Paragraphs 1 through 67 are re-alleged and incorporated by reference.

69. Defendants violated 40 C.F.R. § 80.1035 by failing to submit annual attest engagements reports relating to the MSAT Rule for the 2002 and 2005 reporting years.

70. Pursuant to Section 211(d)(1) and (2) of the Act, 42 U.S.C. § 7545(d)(1) and (2), and 40 C.F.R. § 19.4, the violations set forth above subject the Defendants to injunctive relief and civil penalties of up to $27,500 per day, plus the amount of any economic benefit or savings resulting from the violation for violations that occurred on or before March 15, 2004; and $32,500 per day, plus the amount of any economic benefit or savings resulting from the violation for violations that occurred after March 15, 2004.

## TWELFTH CLAIM FOR RELIEF

71. Paragraphs 1 through 70 are re-alleged and incorporated by reference.

72. From at least May 1, 2002 through August 2006, Defendants violated Section 211(h) of the Act, 42 U.S.C. § 7545(h), and the Volatility Regulations at 40 C.F.R. § 80.27, by introducing into commerce gasoline during the regulatory control period whose RVP exceeded the applicable standard.

73. Pursuant to Section 211(d)(1) and (2) of the Act, 42 U.S.C. § 7545(d)(1) and (2), and 40 C.F.R. § 19.4, the violations set forth above subject the Defendants to injunctive relief and civil penalties of up to $27,500 per day, plus the amount of any economic benefit or savings resulting from the violation for violations that occurred on or before March 15, 2004; and $32,500 per day, plus the amount of any economic benefit or savings resulting from the violation for violations that occurred after March 15, 2004.

## THIRTEENTH CLAIM FOR RELIEF

74. Paragraphs 1 through 73 are re-alleged and incorporated by reference.

75. From at least October 2001 through August 2006, Defendants violated the "substantially similar" requirements in Section 211(f) of the Act, 42 U.S.C. § 7545(f), by manufacturing gasoline containing more than 10 volume percent ethanol.

76. Pursuant to Section 211(d)(1) and (2) of the Act, 42 U.S.C. § 7545(d)(1) and (2), and 40 C.F.R. § 19.4, the violations set forth above subject the Defendants to injunctive relief and civil penalties of up to $27,500 per day, plus the amount of any economic benefit or savings resulting from the violation for violations that occurred on or before March 15, 2004; and $32,500 per day, plus the amount of any economic benefit or savings resulting from the violation for violations that occurred after March 15, 2004.

## PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests that this Court enter judgement against Defendants:

A. Imposing a civil penalty against Defendants for each violation of Section 211 of the Act, 42 U.S.C. § 7545, and the Fuels Regulations, alleged herein, of up to $27,500 per day, plus the amount of any economic benefit or savings resulting from each violation that occurred prior to March 15, 2004; and $32,500 per day, plus the amount of any economic benefit or savings resulting from each violation that occurred after March

15, 2004;

  B. Enjoining Defendants from committing any further violations of the Act and regulations promulgated thereunder, pursuant to Section 211(d)(2) of the Act, 42 U.S.C. § 7545(d)(2);

  C. Awarding the United States its costs of this action; and

  D. Granting the United States such other relief as the Court deems just and proper.

        Respectfully submitted,

        RONALD J. TENPAS
        Acting Assistant Attorney General
        Environment and Natural Resources Division

        BRUCE GELBER
        Section Chief
        Environmental Enforcement Section
        U.S. Department of Justice

         s/ Mark C. Elmer
        MARK C. ELMER
        Trial Attorney
        Environmental Enforcement Section
        Environment and Natural Resources Division
        U.S. Department of Justice
        1961 Stout Street, 8th Floor
        Denver, Colorado 80294
        Tel: (303) 844-1352
        Fax: (303) 844-1350
        Email: mark.elmer@usdoj.gov

TROY A. EID
United States Attorney


_s/ Stephen D. Taylor_
STEPHEN D. TAYLOR
Assistant United States Attorney
1225 Seventeenth Street, Suite 700
Denver, CO 80202
Tel:  (303) 454-0100
Fax:  (303) 454-0408
Email: stephen.taylor@usdoj.gov


*Attorneys for the United States of America*